#8 15BH FEE PAID SUMMONS ISSUED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YILI TSENG,<br>      Plaintiff,<br><br>v.<br><br>MADISON HARRIS, DOE 1, DOE 2, DOE 3,<br>DOE 4, DOE 5, DOE 6, DOE 7, DOE 8, DOE 9,<br>DOE 10, DOE 11, DOE 12, DOE 13, DOE 14,<br>and DOE 15,<br><br>      Defendants, | CIVIL DIVISION<br>Case No. 2:20-cv-1121<br><br>**FILED**<br>JUL 27 2020<br>CLERK U.S. DISTRICT COURT<br>WEST. DIST. OF PENNSYLVANIA |

## COMPLAINT

COMES NOW, Yili Tseng to demand judgment against the Defendants, Madison Harris, Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Doe 6, Doe 7, Doe 8, Doe 9, Doe 10, Doe 11, Doe 12, Doe 13, Doe 14, and Doe 15, for defamation and conspiracy to defame and states as follow:

### The Parties

1. Yili Tseng was an Assistant Professor in Department of Computer Science ("CS") at Slippery Rock University of Pennsylvania ("SRU") and resides in Pennsylvania.

2. All defendants, Madison Harris and Doe 1-15 whose names and addresses are withheld by SRU are students of CS Department, SRU. It is believed some defendants are residents of Pennsylvania while others reside outside Pennsylvania.

### Factual Allegations

3. Traditionally, students of CS Department have been misled and spoiled by Deborah Whitfield ("Whitfield"), former CS Department Chair, and administrators of SRU as to believe that they can complain against any professors on any issue with any excuses including

false statements and that they would not be disciplined even for filing false allegations as students. Some students do file baseless or meritless complaints against professors regularly whenever they feel they would not receive the grades they expected regardless of their behaviors and performance.

4. All defendants were taking CPSC 300 Challenges of Technology taught by Plaintiff in Fall 2019 semester at SRU. On October 14, 2019, Madison Harris ("Harris"), an advisee of Whitfield, sent a hostile e-mail to Plaintiff to inquire about how her Chapter 1 Assignment was graded and other questions regarding the course. Plaintiffs immediately replied and explained that she lost points because she did not fulfill all requirements of the question. Nonetheless, Harris was unhappy about the explanation and insisted that she did fulfill the requirements. Two hours later, Harris sent Plaintiff another e-mail with an attached document which contains her first e-mail, Plaintiff's reply, and other information which she claimed to be problems of CPSC 300 to threaten Plaintiff to "review it and consider changing some things for the second half of the semester." Clearly, Harris insisted that she did not make any mistake in the assignment in question and implied she would write up documents with twisted facts to attack Plaintiff if he did not follow her wish. Plaintiff ignored her threat as all the claims in the document have no merits.

5. The next day, Harris complained against Plaintiff with Sam Thangiah ("Thangiah"), CS Department Chair, and asked him to order Plaintiff to return her lost points. Nevertheless, Thangiah supported Plaintiff and denied her request.

6. CPSC 300 covers ethics in computer fields and is a required course in the curriculum. Historically, CS students hate and are reluctant to take CPSC 300 because they think the course is simple, straightforward, and not directly relevant to computer knowledge. Students

feel that they should not waste time to take it or at least the instructors should make it an easy course. As a new faculty member in the department, Plaintiff did not know about the phenomenon and the fact that many CS students believe they can complain against any professors even with false statements to make their cases.

7. Seeing most of the students in the class were slack and not paying attention to the lectures after weeks into the semester, Plaintiff tightened up the course workload by requesting students to read more articles, watch more videos, and write more discussion assignments. Almost all students were dissatisfied with the change because of the increased workload. Harris took advantage of the situation. She composed a base document which contains lots of false statements and twisted facts about Plaintiff's CPSC 300 class. Harris then circulated it around the class in order to incite other students to file a joint complaint against Plaintiff. Doe 1-14 were encouraged by the false allegations in the base document and added their own false allegations to make a 13-page joint complaint against Plaintiff eventually (Exhibit 1). The false allegations included in the complaint will be stated in Paragraph 13 to improve the readability of the Complaint.

8. In October 2019, Harris, Connie Lemke ("Lemke"), and Aran Bybee ("Bybee") wrongly worked together and submitted Assignment 1 in CPSC 300 which is an individual assignment as a group assignment. They lost significant points because they did not follow the requirements of Assignment 1 and did it as a group assignment. Plaintiff kindly allowed them to re-submit in order to improve their grades. They received different grades after their re-submissions of Assignment 1 because of different levels of corrections. Nonetheless, on November 7, 2019, Harris sent Plaintiff an e-mail to argue for the grade she received for re-submitted Assignment 1. Plaintiff replied and explained how she received the grade. Hence,

Harris knew that she received the lowest grades among her group members because she did not correct her mistakes and that it has nothing to do with her gender because the other female student, Lemke, received a grade much higher than hers and that of the male student, Bybee. However, Harris manipulated the event and made it a gender discrimination complaint on grading against Plaintiff out of malice later.

9. On November 15, 2019, Plaintiff received a heart bypass surgery and started the medical leave for the rest of the semester. On or about the same day, Harris filed the joint complaint with Michael Zieg ("Zieg"), interim Dean of College of Health, Engineering, and Science ("CHES"), SRU. Zieg officially notified Jerry Chmielewski ("Chmielewski"), Interim Provost, SRU, Holly McCoy ("McCoy"), Assistant Vice President Diversity and Compliance, SRU, and Lynne Motyl, Chief Human Resources Officer, SRU, of the joint complaint. The names of the complainants are withheld by Zieg. Plaintiff only received a copy of the complaint with complainants' names redacted.

10. On or about November 15, 2019, Harris filed a complaint of gender discrimination on Assignment 1 with McCoy of the Office of Diversity and Equal Opportunities ("ODEO"), SRU against Plaintiff. Regardless of ODEOs's directions stating "Accusation of discrimination and harassment are serious matters that can have grave consequences for the accused individual. False accusations are unacceptable and may result in disciplinary action, to the extent permitted by law." and offering informal and formal complaint procedures, Harris still chose to proceed with formal complaint procedure on December 9, 2019. McCoy officially notified Chmielewski, Zieg, and Motyl of the complaint. After investigation, ODEO found no violation of discrimination policy and closed the discrimination complaint on May 6, 2020 (Exhibit 2). The discrimination charge is false and defamatory.

11. Plaintiff was a new faculty member at SRU who needs to go through first-year probationary evaluation in order to receive next-year contract. The evaluation were conducted by the Department Evaluation Committee chaired by Whitfield, Thangiah, and Zieg from January to February, 2020. However, Plaintiff has not had any chance to defend for himself on the joint complaint in front of Zieg until February 24, 2020 while he never had any chance to discuss it with Thangiah and Whitfield. Nevertheless, Zieg revealed the joint complaint against Plaintiff or at least its contents to Thangiah and even made some directives regarding some claims in the complaint to Thangiah during their meeting in December 2019. The fact shows that Zieg believes in the joint complaint without investigation and had pre-determined that Plaintiff had some wrongdoings without consulting Plaintiff. Without doubts, Thangiah sensed the attitude of and pressure from Zieg. This complaint is defamation, not opinions. It damages Plaintiff's professional reputation in front of supervisors and colleagues. Consequently, Whitfield, Thangiah, and Zieg recommended not to renew Plaintiff's contract on January 30, 2020, February 7, 2020, and February 28, 2020, respectively. The President of SRU, William Behr ("Behr"), notified that Plaintiff's contract will not be renewed by a letter dated March 17, 2020.

12. On or about March 31, 2020, after SRU ordered to change all its face-to face courses to online courses because of COVID-19, Doe 15 who may be one of Doe 1-14 sent an e-mail to Behr to show his concern about the change (Exhibit 3). In his e-mail, Doe 15 mentioned that two other faculty members took the same teaching methods adopted by Plaintiff for online courses. But Doe 15 singled out Plaintiff by pointing out his name and claimed "I feel like the quality of the teaching presented is seriously declining with no recourse." without providing any tangible basis. This e-mail was forwarded to Zieg. In turn, Zieg carbon-copied Thangiah while

notifying Plaintiff of this student's concern. Doe 15's action is defamation, not an opinion. It damages Plaintiff's professional reputation in front of supervisors and colleagues.

      13.      This 13-page complaint includes the following false allegations:

A. "he copied the exact syllabus from another computer science professor," The truth is that a colleague provided his syllabus to Plaintiff so Plaintiff can use it as base to create his own syllabus which maintains consistent teaching theme for CPSC 300 for accreditation purpose.

B. "Being that he copied another professor's syllabus, for the first few weeks of the class, we were unaware of the actual grading scale, any office hours, or even an office location for Yili Tseng." Exhibit 4 shows that the syllabus was published on August 26, 2019, the day before the first class. Exhibit 5 shows that grading scale, office hours, and office location is listed in the syllabus. Plaintiff did not copy other's syllabus.

C. "We also had no idea what assignments would be due in the class, being that it wasn't his syllabus that he was using." Exhibit 5 shows all major assignments required. Plaintiff created his own syllabus.

D. Plaintiff gave a ten-minute break in the middle of the class as students were always distracted after 25 minutes and Plaintiff wanted students to have a break to refresh. But the complaint twisted it as "It became apparent after several weeks that this time was used by the professor more so than the students. If none of the students left the class, the professor would still leave for ten to fifteen minutes per class." Plaintiff never left the classroom for 15 minutes.

E. "Tseng attempted to teach for the first five weeks of the course. Although his teaching methods were ineffective." The final grades were issued by a colleague who took over CPSC 300 for about two weeks after Plaintiff left for heart surgery. All students in CPSC 300 received A's.

That proves Plaintiff's teaching effectiveness. If Plaintiff's teaching was ineffective, no instructors can change students' performance in only two weeks.

F. "It was also at this point where the midterm was announced. It was not in the syllabus he stole from a different professor," The fact is that the midterm exam is listed in the syllabus and Plaintiff did not steal other's syllabus.

G. "During this time, we were told about our first assignment, which was explained to us as a group project; This (sic) was done because of the confusion of other activities that were done in class." The assignment prior to Assignment 1 is a group assignment. Plaintiff never declared Assignment 1 as a group assignment. However, six out of 24 students were careless and did Assignment 1 as group assignment. If Plaintiff did announce Assignment 1 as a group assignment, all class, not six students, would have done it as a group assignment.

H. "Tseng stated that he would indicate what was group and individual work, but then wouldn't indicate it on D2L. The class had to ask to clarify the following week, at which point Tseng told us that if it wasn't shown as group work, it was to be completed individually." It is common sense or by default that assignments are individual assignments unless it is explicitly declared as a group assignment. Plaintiff only clarified the concept, never promised to indicate explicitly.

I. "The problem with this is that students had already turned in activities that he said were group activities, but he said they had to be redone because they were to be done individually." Six students completed Assignment 1 as a group assignment because of their carelessness and received low grades. Plaintiff kindly allowed them to re-submit in order to improve their grades. They could have chosen not to re-submit and maintained the original grades.

J. "This remained a problem for the rest of the semester until Tseng decided to not do any more group activities because of the confusion that was caused by his actions." There are only two

7

group assignments in CPSC 300: One is the final project which was due at the end of the semester. The other is Activity 14 during the semester which is explicitly announced as a group assignment. There is no necessity to explicitly declare individual assignments as individual assignments.

K. "we were given a midterm exam that was unrelated to the material we discussed in class. Some questions were fact-based, but some questions were opinionated. The issue is that these questions were still multiple choice, which leads to an opinion of someone being graded as being incorrect, which is unfair to the students." The fact is that all questions in the midterm exam are related to materials covered in CPSC 300 to that point and fact-based.

L. "During this same week, several students had a question in class about an assignment that we had due at the end of the week. It took the students over thirty minutes to ask Tseng to clarify what he wanted from one of the questions. He repeatedly said he didn't understand what we were asking of him, and he concluded by saying, 'if you don't understand what I want, I can't help you. The project aren't based on English.'" The fact is that only one student deliberately asked several senseless questions and it took no more than 15 minutes for Plaintiff to answer them and end the conversation. The assignment question requires to list three professions which were eliminated by computer technologies. The student asked how many percentage of the positions lost can be considered as eliminated. Plaintiff indicated no percentage is necessary and gave an example to explain. But the student repeatedly insisted that he must know the percentage in order to answer. Plaintiff patiently gave more examples to explain why no percentage is necessary. Yet the student raised his voice and stated he must know. At that point, Plaintiff was sure that the student simply wanted to cause some disturbance to embarrass Plaintiff and decided to end the

senseless conversation. Plaintiff told him "If you still cannot understand after I gave so many examples, then there is nothing I can help."

M. "This was very problematic because a portion of the grade is grammar and proper use of English, as well as being given an assignment where we didn't know what was being asked." The fact is that no grammar and proper use of English is part of the grading and the question is very clear because it requires to "List three professions which were eliminated by computer technologies."

N. "What's worse is that Tseng began to get frustrated with the students and thought they were disrespectful. He said the students called him annoying, which is inaccurate, and he refused to explain what he wanted us to do with regards to the assignment." What happened is that the student said "I know you are annoyed. But I have to know the percentage!" and Plaintiff replied "I am not annoyed. But if you still cannot understand after I gave so many examples, then there is nothing I can help." Any instructor would end the senseless conversation under the same circumstance.

O. "Tseng has been unclear on how he wants assignments submitted through D2L. Some students have lost points for turning in an assignment in the wrong format, but he has sent contradictory emails for the ways he wants things turned." The fact is that Plaintiff never deducted points for submitting assignments in wrong format.

P. "In the time since Tseng has told us that the class would be held online, then changed it to where we were required to come." The fact is that Plaintiff never declared that the class will be held online.

Q. "Refuses to correct documentation on assignments that change, however, will contradict himself in class and deduct points arbitrarily even though exceptions were made verbally in class. The allegation never happened.

R. "The grading is not clear and it is unfair that the instructions are unclear to begin with. Then they are graded according to vagueness." The fact is that this Defendant never paid attention to assignment requirements and blamed her own carelessness on Plaintiff.

S. "He doesn't clarify anything and only argues with students on simple questions." The fact is that plaintiff always clarified confusions if students raised questions and the only argument with a students is the incident aforementioned.

T. "However, even this was completely arbitrary slide reading with slides he 'borrowed' from other professors here." The fact is that Plaintiff's teaching was not slide reading and the slides Plaintiff based on were provided by the publisher.

U. "Along with that, he is a liar. He wanted Assignment 01 to be done individually, however he never made that clear, and since we have other activities that are called group activities in class, multiple groups assumed these were group activities. After multiple groups began working on it and some (like mine) finished the entire assignment, we asked Professor Tseng MULTIPLE times in a single class period if we would be able to turn this assignment in while in groups, and then do the rest individually since it was not made clear before we began working on the assignment that it was supposed to be individual work. He said yes. However, whenever we get our grades back, we were docked points for doing the project in groups." Again, only one assignment and the final project were explicitly declared as group assignments. It is unnecessary to explicitly announce and identify individual assignments. Plaintiff never announced Assignment 1 as a group assignment. Let alone allow any student to do it as a group assignment

multiple times in a class period. Actually only two groups of students carelessly did Assignment 1 as a group assignment. Points were deducted for that mistake. But Plaintiff kindly allowed them to re-submit to improve grades. No students had repeated the same mistakes afterwards.

V. "To rub salt into the wound, when we confronted him about this, he blatantly lied to our faces saying that he never said we could do Assignment 01 in groups. Following this, anytime students attempt to clarify his instructions to make sure stupid things like this don't happen again, he gets defensive and refuses to work with the students to ensure that we do his assignments the way he wants." The fact is that Plaintiff never said Assignment 1 could be done as a group assignment and never lied about the truth. Plaintiff always clarified whenever students raised questions, including the only incident when the student argued with Plaintiff.

W. "He will say multiple things, and then as a student, you assume he would stick to his word as a professor. Until you get your assignment back and you are docked many points due to him taking back his words and lying to the students face." That fact is that all requirements are clearly stated in each question and there is no need for Plaintiff to add more details. But this Defendant did not fulfill the requirements and blame Plaintiff for his careless mistakes.

X. "

- Refuses to answer students' questions

- Seems to not understand students' questions (even when rephrased)

- Verbal fights arise between students and Tseng due to his refusal to understandand (sic) answer questions

- When we bring up an issue with an assignment or a question, he refuses to admit he is wrong"

The fact is that all allegations are false.

Y. "If we ask for help or for clarification, he will either contradict himself or ignore us. For example, he told certain students that Assignment 1 was a group assignment after they asked multiple times. Then, he made them redo the assignment after turning it in since it was not a group assignment even though he stated it was in class." This allegation does not make sense. This Defendant knows Assignment 1 is an individual assignment. Then why would Plaintiff tell only certain students, not whole class, that it is a group assignment to create chaos?

Z. "class was told that assignment 1 could be done in groups for this since there was a misunderstanding about what assignments could be done in groups and what needed to be done individually" Again, Plaintiff never said Assignment 1 is a group assignment. Otherwise, why only six out of 24 students did it as a group assignment?

AA. "Loud argument between student and Dr. Tseng about the specifics of the question; at one-point Dr. Tseng believed that he was being called annoying" As aforementioned, it is the student who raised his voice and Plaintiff ended the conversation. What Plaintiff said is "I am not annoyed." after the student said "I know you are annoyed."

AB. "Anytime someone had a question, his answer would be vague, or if he gave a clear enough answer, what he said during class would be penalized for doing on the assignments. The most recent incident of this was when the first assignment was graded and handed back and people got points taken away for working in groups even though he said people could during class." Again, Plaintiff never said Assignment 1 is a group assignment and Plaintiff's answers were never vague.

AC. "When he asked a question the three or four times that he did in the first five or six weeks we would respond with an idea. Ex. The security could be a problem for this but they are working on fixing the small breach it. Then Dr. Tseng would say well what if a terrorist group

would access this database steal your information and use it to frame you for the attack. It he would try to put everything to the extreme and if it was not that we were wrong. He has said it is an opinion-based class and in my opinion not every little thing in life is needed to be given the extreme." The fact is that Plaintiff never mentioned extreme examples and the example cited by this Defendant never happened.

**First Cause of Action: Defamation *Per Se***
**(As Against Harris and Doe 1-14)**

13.   Plaintiff re-alleges and re-incorporate by reference all allegations in paragraphs 1 through 7, paragraph 9, and paragraphs 11 through 13 of this Complaint.

14.   Harris, Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, Doe 6, Doe 7, Doe 8, Doe 9, Doe 10, Doe 11, Doe 12, Doe 13, and Doe 14 knew most of the allegations in the joint complaint against Plaintiff are false. False statements are definitely not opinions. Nevertheless, they blatantly filed the complaint with Zieg for the purpose of willfully and maliciously injuring Plaintiff's reputation.. Zieg in turn revealed the complaint or its contents to Thangiah, other supervisors, and possibly other colleagues of Plaintiff, including Whitfield. Harris may also have communicated the false allegations with Whitfield. Harris and Doe 1-14 by their action caused damage to Plaintiff's personal and professional reputation in front of his supervisors and colleagues. Supervisors and colleagues' negative impressions out of the false statements directly or indirectly affected Plaintiff's evaluation and caused the non-renewal of his next-year contract. The COVID-19 pandemic makes it much more difficult for Plaintiff to seek for another position which makes the emotional stress and pressure multiply.

WHEREFORE, Plaintiff prays that this Court:

A.   Grant judgment in favor of Plaintiff; and

B.  Award Plaintiff compensatory damages in the amount of $100,000, or such other amount as may be determined at the trial; and

C.  Award Plaintiff punitive damages in the amount of $100,000, or such other amount as may be determined at the trial; and

D.  Award Plaintiff any further relief that this Court deems just and proper.

**Second Cause of Action: Defamation *Per Se***
**(As Against Madison Harris)**

15.  Plaintiff re-alleges and re-incorporate by reference all allegations in paragraphs 1 through 8, and paragraph 10 of this Complaint.

16.  Harris clearly knows that Plaintiff did not discriminate on her gender to grade. The directions provided by ODEO advise that discrimination charge is a serious charge and that false charge may bring grave consequences to the accused and are punishable. However, Harris blatantly filed the false charge against Plaintiff for the purpose of willfully and maliciously injuring Plaintiff's reputation. Harris by her action caused damage to Plaintiff's personal and professional reputation in front of his supervisors and colleagues.

WHEREFORE, Plaintiff prays that this Court:

A.  Grant judgment in favor of Plaintiff; and

B.  Award Plaintiff compensatory damages in the amount of $100,000, or such other amount as may be determined at the trial; and

C.  Award Plaintiff punitive damages in the amount of $100,000, or such other amount as may be determined at the trial; and

D.  Award Plaintiff any further relief that this Court deems just and proper.

**Third Cause of Action: Defamation *Per Se***
**(As Against Doe 15)**

17. Plaintiff re-alleges and re-incorporate by reference all allegations in paragraph 12 of this Complaint.

18. In his e-mail, Doe 15 singled out Plaintiff among other colleagues and made the false statement that quality of the teaching is declined without any tangible evidence. That is not an opinion. It is a libel which damaged Plaintiff's personal and professional reputation in front of his supervisors.

WHEREFORE, Plaintiff prays that this Court:

A. Grant judgment in favor of Plaintiff; and

B. Award Plaintiff compensatory damages in the amount of $5,000, or such other amount as may be determined at the trial; and

C. Award Plaintiff any further relief that this Court deems just and proper.

### Fourth Cause of Action: Conspiracy to Defame
### (As Against Madison Harris and Doe 1-14)

19. Plaintiff re-alleges and re-incorporate by reference all allegations in paragraphs 1 through 7, paragraph 9, and paragraphs 11 through 13 of this Complaint.

20. Again, false statements are not opinions. Quoted from the joint complaint filed by Defendants, "In this document, there will be a summary of the complaints made by students of the class, which will be reviewed by the students during class time, as well as the individual complaints from students who decided to take part.", it proves that Harris and Doe 1-14 knew most of their allegations are false, but still acted together to compose and file the joint complaint full of false statements against Plaintiff for the purpose of willfully and maliciously injuring Plaintiff's reputation. Harris and Doe 1-14 by their action caused the damage to Plaintiff's personal and professional reputation in front of his supervisors and colleagues. Supervisors and colleagues' negative impressions out of the false statements directly or indirectly affected

Plaintiff's evaluation and caused the non-renewal of his next-year contract. The COVID-19 pandemic makes it much more difficult for Plaintiff to seek for another position which makes the emotional stress and pressure multiply.

      WHEREFORE, Plaintiff prays that this Court:

A.     Grant judgment in favor of Plaintiff; and

B.     Award Plaintiff compensatory damages in the amount of $100,000, or such other amount as may be determined at the trial; and

C.     Award Plaintiff punitive damages in the amount of $100,000, or such other amount as may be determined at the trial; and

D.     Award Plaintiff attorney's fees and costs if an attorney is retained.

E.     Award Plaintiff any further relief that this Court deems just and proper.

Dated: July 27, 2020

                                              Respectfully submitted,

*/s/ Yili Tseng*

YILI TSENG, Ph.D.
156 Lexington Drive
Cranberry Township, PA 16066-3728
Cell: 336-918-1689
*Pro Se*